## A93A1494. WILLIAMS v. THE STATE.
(438 SE2d 126)

BLACKBURN, Judge.

The appellant, Bernard Williams, was indicted along with several

other individuals for multiple drug-related offenses. Following the trial court's denial of his motion to suppress wiretap communications seized by the police pursuant to an investigation warrant, Williams pleaded guilty to conspiracy to possess cocaine with the intent to distribute, conditioned upon the preservation of his right to appeal the denial of his motion to suppress. See *Mims v. State*, 201 Ga. App. 277 (1) (410 SE2d 824) (1991).

For several years preceding the events in issue here, police officers with the Rome/Floyd Metro Task Force had received numerous complaints from concerned citizens and reports from confidential informants regarding the activity of Williams and his family in the distribution of narcotics in that area. In the course of the ongoing investigation of such, on March 20, 1992, the district attorney applied for and obtained authorization for a pen register to be placed on the residential telephone of Williams' mother for a 20-day period. Operation of this pen register terminated on April 9, 1992, as specified in the investigation warrant, but the return of the warrant was not filed until May 1, 1992, twelve days beyond the 30-day deadline provided in OCGA § 16-11-64 (b) (6).

Based in part on the information obtained as a result of that pen register, on April 14, 1992, the district attorney applied for and obtained an investigation warrant to wiretap Williams' residential telephone for the 20-day period from April 14, 1992, through May 3, 1992. On May 13, 1992, the district attorney timely filed the return of the warrant, and at that time he also tendered 62 cassette tapes of recorded intercepted calls. The superior court then issued an order for the tapes to be sealed, after finding that (1) the tapes had not been tendered immediately following the actual wiretap period because of the law enforcement officers' involvement with securing arrest warrants and executing search warrants, and the court's own inaccessibility due to its trial calendar, and (2) the tapes had not been tampered with. Those intercepted communications supplied the basis for arresting Williams and the other individuals involved in the narcotics ring.

1. Williams contends that the intercepted communications should have been suppressed because the investigating police officer maintained possession of the pen register warrant and supporting documents after the return of the warrant without a written order of the issuing judge as required by OCGA § 16-11-64 (b) (5), and because the return of the pen register warrant was not filed within 30 days of the issuance of the warrant as required by OCGA § 16-11-64 (b) (6). However, neither deficiency provides any basis for suppressing the intercepted communications from Williams' telephone, because Williams has no standing to complain of any noncompliance with the procedural safeguards applicable to the pen register warrant placed

on his *mother's* telephone. "When the voice of an individual is not heard and the tap is not on his premises, he has no standing. [Cit.]" *Ellis v. State*, 256 Ga. 751, 755 (353 SE2d 19) (1987).

2. Williams also contends that the application for the investigation warrant for the wiretap on his telephone failed to show that conventional investigation techniques had been tried and failed, or were unlikely to be successful, as required by 18 USCA § 2518 (1) (c). However, the application and the supporting affidavit specifically pointed out that (1) ordinary surveillance would be easily detected because Williams' home was located in a heavily populated area; (2) any attempts to infiltrate the criminal enterprise would be difficult and dangerous, and risk revelation of the investigation; (3) the only effective way to discover all participants in the narcotics ring, i.e., suppliers and purchasers, would be by wiretap; and (4) the secrecy with which persons engaged in such conspiratorial criminal enterprises would frustrate other investigative techniques.

"[Sections] 2518 (1) (c) and (3) (c) are simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime. Their purpose is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques. The provisions contemplate that the showing be tested in a practical and commonsense fashion." (Citations and punctuation omitted.) *State v. Bilbo*, 240 Ga. 601, 602 (242 SE2d 21) (1978). See also *Romano v. State*, 162 Ga. App. 816, 820 (292 SE2d 533) (1982).

In the instant case, the application and supporting affidavit for the wiretap warrant sufficiently demonstrated that conventional investigative techniques had been tried but were unsuccessful, or were likely to fail, in proving the drug trafficking enterprise and in uncovering all of its participants. Considered in a practical and commonsense fashion, that showing complied with 18 USCA § 2518, and the trial court properly denied Williams' motion to suppress on that basis.

3. 18 USCA § 2518 (5) requires an investigation warrant to contain a provision that the wiretap shall be conducted in such a way as to minimize the interception of communications unrelated to the investigation. In the warrant authorizing the wiretap of Williams' telephone, the issuing judge complied with that statutory mandate by instructing that the "district attorney, law enforcement officers, and agents are forbidden to record any conversations or discussions which are personal and private in nature or not specified in this warrant." Williams contends that the officers failed to conduct the wiretap in a manner that would minimize the interception of such personal com-

munications, as instructed in the investigation warrant.

Pursuant to the minimization order contained in the warrant, the supervising police officer instructed the officers conducting the wiretap to cease interception of a call as soon as it was determined that the call was personal and unrelated to the investigation, but to resume interception approximately 45 seconds later to check whether the call remained purely personal. A total of 1,001 calls was intercepted, but approximately three fourths of those calls resulted in no conversation (no answers, busy signals, answering machine response with no message, etc.). The majority of the remaining calls actually involving conversations were very brief, lasting one minute or less. During the wiretap, 32 calls were minimized to excise the personal conversation, and 29 calls were regarded as evidence.

18 USCA § 2518 (5) "does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interceptions of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case." *Scott v. United States*, 436 U. S. 128, 140 (98 SC 1717, 56 LE2d 168) (1978).

In the instant case, only about one fourth of the intercepted calls resulted in conversations, and most of those conversations terminated after one minute or less. As a practical matter, those conversations ended by the time the executing officers could determine whether the calls were personal in nature. "In a case such as this, involving a wide-ranging conspiracy with a large number of participants, even a seasoned listener would have been hard pressed to determine with any precision the relevancy of many of the calls before they were completed." *Scott v. United States*, id. at 142. See also *United States v. Homick*, 964 F2d 899 (9th Cir. 1992), where listening to all wiretap conversations for two minutes before terminating surveillance did not violate the minimization requirement.

In *Scott*, the United States Supreme Court also suggested that more extensive surveillance may be justified in an attempt to determine the scope of a widespread conspiratorial enterprise. *Scott v. United States*, supra at 140. Such a determination was one of the primary purposes of the wiretap in this case. Given that need and purpose for the wiretap, and the brevity of most of the intercepted calls, the trial court did not err in concluding that the executing officers took reasonable measures to minimize the interception and monitoring of Williams' telephone calls. Accordingly, the trial court properly denied Williams' motion to suppress on that ground as well.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED NOVEMBER 4, 1993 —
RECONSIDERATION DENIED NOVEMBER 17, 1993 — 

*Jones, Byington, Durham & Payne, Luther H. Beck, Jr.*, for appellant.

*Stephen F. Lanier, District Attorney, Lisa W. Pettit, Assistant District Attorney*, for appellee.